UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 03-22778-CIV-JORDAN

| | |
|---|---|
| ROBERT S. WOLFF, et al. ) | |
| Plaintiffs ) | |
| ) | |
| vs. ) | |
| ) | |
| LEADENHALL BANK & TRUST ) | |
| Defendant ) | |
| ) | |

FILED by _____ D.C.

MAR 3 0 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### ORDER ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

The plaintiffs, Robert S. Wolff, Edward Turner, and Grey Wolf Holdings, Ltd., Paul Janssens, and Phillip A. Madison bring this civil RICO conspiracy class action against Leadenhall Bank & Trust ("Leadenhall"). In their amended complaint, the plaintiffs allege a claim for RICO conspiracy, civil conspiracy for conversion, and violations of Florida's Deceptive and Unfair Trade Practices Act. Leadenhall now moves to dismiss all counts of the amended complaint. For the reasons stated below, Leadenhall's motion to dismiss the amended complaint [D.E. 29] is DENIED as to Counts I and III, and GRANTED as to Count II, which is dismissed without prejudice.

### I. BACKGROUND

The plaintiffs, self-described "lenders," bring this civil RICO conspiracy class action against Leadenhall. The class consists of individuals and entities who allegedly made short-term loans to a network of companies doing business as "Cash 4 Titles" for use in its car title loan business. The suit arises out of the plaintiffs' participation in what was allegedly a legitimate operation of a network of companies doing business as "Cash 4 Titles" – providing short-term loans to borrowers secured by motor vehicle titles – and eventually became a multi-level, Ponzi-type fraudulent enterprise ("the C4T MLL Enterprise"). Some short term loans were made through different funding entities established as vehicles for receiving funds for Cash 4 Titles. According to the plaintiffs, "the common and shared purpose of the various individuals and entities who made up the C4T MLL Enterprise was to raise operating cash and funds to lend to the Cash 4 Titles business, and to earn a high rate of return on monies lent to that business." Amended Complaint at ¶ 52 [D.E. 13].



As for Leadenhall's role in the RICO conspiracy, the plaintiffs claim that the bank conspired with a number of other entities and individuals to perpetuate a scheme that illegally misappropriated hundreds of millions of dollars from the class members. Specifically, the plaintiffs allege that Leadenhall knew of the illegal nature of the C4T MLL Enterprise and played an integral role in attracting and appeasing lenders by creating and maintaining an appearance of legitimacy to the C4T operation. Leadenhall, as alleged by the plaintiffs, also made payments early on to class members under the pretext that these payments came from the actual profits of Cash 4 Titles. Such payments led the early lenders to believe that the business generated interest or principal payments. The plaintiffs further claim that Leadenhall sought to attract and maintain lenders to the C4T enterprise because it profited from, among other things, the depository accounts and credit/debit card relationships established with the class members, as well as the wire transfers and the money flow from class members to the various C4T entities. *See id.* at ¶ 67.

According to the plaintiffs, Charles Homa and Michael Gause were the head of the unlawful C4T pyramid-type scheme. *See* Amended Complaint at ¶¶ 23, 24, 50. The C4T operation collapsed when Mr. Gause was arrested in 1999 and charged in the Southern District of New York. *Id.* at ¶ 53.

The plaintiffs filed suit against Leadenhall and a number of other defendants on October 15, 2003. On April 7, 2004, the plaintiffs filed the amended complaint [D.E. 13]. Leadenhall, the only remaining defendant in this action, now moves to dismiss the amended complaint.

## II. LEGAL STANDARD

A claim must contain a "short and plain statement . . . showing the pleader is entitled to relief. . ." FED.R.CIV.P. 8(a)(2). The purpose of this rule is to give the opposing parties fair notice of the claim being made and allow them to respond intelligently and to define the scope of issues of discovery and ultimately for trial. *See, e.g., Chodos v. Federal Bureau of Investigations*, 559 F.Supp. 69, 71 (S.D.N.Y 1982); *Brown v. Califino*, 75 F.R.D. 497, 498 (D.D.C. 1977); *Prezzi v. Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y 1972); 5 Wright & Miller, Federal Practice & Procedure § 1215 (West 1990). Furthermore, "[e]ach averment of a pleading shall be simple, concise and direct." FED.RCIV.P. 8(e)(1).

Leadenhall's motion to dismiss the amended complaint should not be granted unless it appears beyond doubt that the plaintiffs could prove no set of facts in support which would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41 (1957). I must take the factual allegations of the amended complaint as true and must read the complaint to include any theory on which the plaintiffs can recover. *See Lindner v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992). A dismissal under Rule 12(b)(6) "is viewed with disfavor and rarely granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-1369 (11th Cir. 1997) (citing *Madison v. Purdy*, 410 F.2d 99,100 (5th Cir. 1969); *Int'l Erectors, Inc. V. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968) ("Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate.").

### III. ANALYSIS

### A. RICO CONSPIRACY CLAIM UNDER COUNT I

Leadenhall first argues that the plaintiffs fail to set forth a cause of action of RICO conspiracy under 18 U.S.C. § 1962(d) in Count I of the amended complaint. To allege a RICO conspiracy under § 1962(d), the plaintiffs must also sufficiently allege an illegal agreement to violate a substantive provision of the RICO statute. Leadenhall specifically contends that (1) the RICO claim is barred by the Private Securities Litigation Reform Act; (2) Count I fails to set forth a conspiracy under § 1962(d); and (3) the plaintiffs fail to allege a substantive RICO claim underlying the conspiracy claim.

### 1. THE PRIVATE SECURITIES LITIGATION REFORM ACT

Leadenhall contends that § 107 of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") bars the plaintiff's RICO conspiracy claim because Leadenhall's conduct, as alleged by the plaintiff, is actionable as securities fraud. I disagree.

The PSLRA amended RICO to bar private actions based upon conduct that could give rise to a securities fraud claim. *See* 18 U.S.C. § 1964(c).[1] I must first determine if the conduct pled is

---

[1] Section 1964(c) provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, *except that no person may rely as fraud in the purchase or sale of securities to establish a violation of section 1962.*" 18 U.S.C. § 1964(c) (emphasis added).

3

actionable as securities fraud and, if so, whether the non-securities fraud conduct is pled sufficiently to support a RICO claim. Here, Leadenhall contends that although the plaintiffs style themselves in the amended complaint as "lenders" to the Cash 4 Titles business, "they plainly fashion claims about an investment scheme." *See* Memorandum of Law In Support of Motion to Dismiss at 7 [D.E. 30]. The plaintiffs respond that the amended complaint relies solely upon *post*-loan predicate acts, which sufficiently establish a RICO violation under § 1962 and are not barred by the PSLRA. The plaintiffs also argue that Leadenhall has not pointed to any allegation in the amended complaint that the transactions at issue involved the purchase or sale of securities as defined under the Securities Exchange Act of 1934.

Federal courts have found that the PSLRA does not bar a RICO claim where a plaintiff has alleged post-investment or post-loan fraudulent acts. *See, e.g., Mezzonnen, S.A. v. Wright*, No. 97 CIV. 9380 LMM, 1999 WL 1037866, at *4 (S.D.N.Y. Nov. 16, 1999). For example, courts have found no PSLRA bar where the defendant's alleged fraudulent conduct did not induce new investments or did not involve obtaining investments. *See, e.g., Loftin v. KPMG LLP*, No. 02-81166-CIV, 2003 WL 22225621, at *6 (S.D. Fla. Sept. 10, 2003); *Gintowt v. TL Ventures*, 226 F.Supp.2d 672, 679 (E.D. Pa. 2002). Reading the amended complaint in the light most favorable to the plaintiffs, I find that it alleges fraudulent conduct, such as misappropriating the plaintiffs' funds in the C4T enterprise, which occurred *after* the class members initially provided money to the Cash 4 Titles business. For example, the plaintiffs state that the Cash 4 Titles loan business was a legitimate business opportunity, *see* Amended Complaint at ¶ 42, but "later became a massive scheme to misappropriate the loan proceeds," Amended Complaint at ¶ 46.[2] Leadenhall's reliance

---

[2] The amended complaint also alleges some participation by Leadenhall in attracting new or potential investors. For example, it alleges that Leadenhall's "involvement with the Cash 4 Titles scheme was disseminated throughout the C4T MLL Enterprise and was critical not only in *luring new lenders*, but in placating and comforting existing investors about the alleged legitimacy and soundness of the investment." *Id.* at ¶ 69 (emphasis added). The plaintiffs also allege that James Owen of Leadenhall/Axxess, an entity providing banking and credit/debit card services, knew of the misappropriation of the class members' money and "participated in seminars for existing and *potential* C4T Lenders held in the Bahamas and the United States. *Id.* at ¶ 47-49 (emphasis added). These two statements, read in the light of the entire complaint, are insufficient to establish securities fraud requiring a dismissal of the amended complaint under the liberal standard of Rule 12(b)(6). Should the allegations in the complaint turn out to be artful pleading -- and they may be if the

4

on *Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc.*, 189 F.3d 321 (3d Cir. 1999), is misplaced. In that case, the Third Circuit found that the PSLRA barred the plaintiff's RICO claim because the Ponzi scheme at issue was perpetrated through the purchase and sale of securities, and the plaintiff actually alleged that the Ponzi scheme was securities fraud. *See id.* at 328-29.

Because the plaintiffs have alleged Leadenhall's post-loan conduct as the basis for its RICO claim, I find that the conduct alleged in the amended complaint is not actionable as securities fraud. Accordingly, the PSLRA does not bar the plaintiffs' RICO conspiracy claim. *See Maiz v. Virani*, 253 F.3d 641, 674 (11th Cir. 2001) ("Congress has recognized that money laundering and other post-investment offenses may constitute predicate acts causing racketeering injury for which damages may be recovered under § 1964.").

## 2. § 1962(d) RICO Conspiracy Claim

Leadenhall next contends that the plaintiffs' claim of a RICO conspiracy under § 1962(d) are insufficient because they make only broad, conclusory allegations about Leadenhall's participation in and knowledge of the alleged fraudulent C4T enterprise. Specifically, Leadenhall argues that the plaintiffs' RICO conspiracy claim fails because (1) it contains confusing and misleading allegations; (2) it is factually insufficient; and (3) it does not sufficiently allege agency or vicarious liability. I disagree.

In relevant part, § 1962(d) makes it unlawful to conspire to violate any of the substantive provisions of RICO, including § 1962(c).[3] To state a cause of action for a civil conspiracy, a plaintiff must allege (1) an agreement between two or more parties to achieve an illegal objective; (2) an overt act in furtherance of that illegal objective; and (3) resulting injury. *Anderson v. Smithfield Foods, Inc.*, 209 F.Supp.2d 1270, 1277 (M.D. Fla. 2002) (citing *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898 (11th Cir. 1998)). The RICO conspiracy provision in

---

paragraphs described above are accurate -- Leadenhall is free to raise the issue of the PSLRA bar at the summary judgment stage.

[3] The plaintiffs allege in the amended complaint that the "[d]efendants agreed and conspired to violate 18 U.S.C. § 1962(c). Namely, Defendants have intentionally conspired and agreed to directly and indirectly conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity." Amended Complaint at ¶ 119. The plaintiffs do not include a substantive RICO claim in their amended complaint.

§ 1962(d), however, does not require an overt act. *Id.* Instead a plaintiff must allege that "the conspirators agreed to participate directly or indirectly in the affairs of an enterprise through a pattern of racketeering activity. *Id.* (citations omitted). A "pattern of racketeering activity" is defined at 18 U.S.C. § 1961(5) as "[r]equiring at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."

In the Eleventh Circuit, a plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997) (citations omitted). A conspirator need not have full knowledge of every detail regarding the conspiracy; it is sufficient if one knows of the essential nature of the plan. *Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F.Supp. 1084, 1096 (S.D. Fla. 1992) (citing *United States v. Kopituk*, 690 F.2d 1289 (11th Cir. 1982)). Furthermore, the RICO agreement need not be established by direct evidence; it may be inferred from the conduct of the participants. *Republic of Panama*, 119 F.3d at 950.

I find that the plaintiffs have sufficiently pled a RICO conspiracy claim in the amended complaint. First, the plaintiffs have alleged that Leadenhall agreed to participate directly or indirectly in the C4T enterprise through a pattern of racketeering activity. For example, they allege that Leadenhall conspired to misappropriate and divert funds that class members had loaned for the Cash 4 Titles' business. *See* Amended Complaint at ¶¶ 41, 78. The plaintiffs also allege that Leadenhall participated in a "pattern of related and continuous predicate acts that began sometime in the early to mid-1990s and continued through October of 1999." *Id.* at ¶ 81. They also claim that Leadenhall conducted mail and wire fraud in misappropriating and diverting the class members' funds. *Id.* at ¶ 78. Specifically, Leadenhall, as alleged by the plaintiffs, conspired to misappropriate and divert funds for purposes of the conspirators' personal benefit, use in other businesses controlled by the conspirators, and making interest and/or principal payments to class members to conceal the theft of funds from the C4T enterprise. *Id.* at ¶ 81.

According to the amended complaint, Leadenhall also "personally caused the use of the mails and wires when sending documents relating to the loans and the repayment of such loans . . . . [and

6

when transferring] what purported to be interest and/or principal payment from Cash 4 Titles operating business, but which in actuality were loan proceeds from other Lenders which were being submitted to conceal the conspirators' misappropriation." *Id.* at ¶ 86. Similarly, the plaintiffs claim that Leadenhall participated in money laundering by making financial transactions and transfers through financial institutions in the United States, the Bahamas, the Cayman Islands, and elsewhere. *Id.* at ¶ 80. The amended complaint states that transfers were made from accounts at Leadenhall to individuals and banks in the United States for purposes of concealing the misappropriation of funds and creating the appearance that money was flowing into and out of the Cash 4 Titles business. *Id.* at ¶¶ 73, 84. *See also Florida Software Systems, Inc. v. Columbia/HCA Healthcare Corp.*, 46 F.Supp.2d 1276, 1284 (M.D. Fla. 1999) (finding that seven detailed instances of mail and wire fraud set forth in the amended complaint were sufficient to support an inference that third-party defendant agreed to participate in RICO conspiracy).

The plaintiffs have also sufficiently alleged that Leadenhall was aware of the overall objective of the conspiracy, which was allegedly to misappropriate and divert funds from money provided by class members for the Cash 4 Titles' car loan business. In several paragraphs, the plaintiffs allege Leadenhall's knowledge of the overall objective. They read as follows:

- Leadenhall "was integral in effectuating the goals [of the scheme], perhaps at first unknowingly, but eventually, with knowledge of the scheme." Amended Complaint at ¶ 58

- "With the full knowledge of the Defendants, Homa, Gause and Denson freely used the involvement and reputation of the Defendants as a means to reassure lenders at all levels of the C4T Enterprise." *Id.* at ¶ 69.

- "[A]fter having knowingly converted C4T MLL Enterprise funds to their own control Defendants and their co-conspirators used said unlawfully gained proceeds to fund their lavish lifestyles and make payments to earlier Lenders." *Id.* at ¶ 83.

Not only have the plaintiffs alleged that Leadenhall knew of the overall objective of the conspiracy, but they also sufficiently claim that Leadenhall knew of the "essential nature of the plan." That is, Leadenhall knew that the source or beneficiary of the misappropriated funds originated from the money provided by the class members. *See Republic of Panama*, 119 F.3d at 951 (finding that the plaintiff must allege that the defendants were aware of the "essential nature of the plan" -- *i.e.*, "the

source or beneficiary of the funds they transferred"). Accordingly, the plaintiffs have sufficiently pleaded a RICO conspiracy claim in the amended complaint.

### 3. § 1962(c) RICO CLAIM

Leadenhall next argues that the plaintiffs fail to state a substantive RICO claim underlying their RICO conspiracy count. Namely, Leadenhall contends that the plaintiffs fail to specify the RICO enterprise as well as a pattern of racketeering. I disagree on both points.

To support a claim of RICO conspiracy, the plaintiffs must allege an illegal agreement to violate a substantive provision of the RICO statute. *See* 18 U.S.C. § 1962(d); *Jackson v. Bellsouth Telecommunications.*, 372 F.3d 1250, 1269 (11th Cir. 2004). As the substantive RICO provision, the plaintiffs allege in Count I that Leadenhall agreed and conspired to violate 18 U.S.C. § 1962(c). *See* Amended Complaint at ¶ 119. The elements of a civil RICO cause of action are: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity. *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citing *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). A RICO "enterprise" exists "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." *Jackson*, 372 F.3d at1264 (citation omitted). A "pattern of racketeering" consists of two predicate acts of racketeering activity occurring within a ten year period. 18 U.S.C. § 1961(5).

#### a. "ENTERPRISE"

Leadenhall first contends that the plaintiffs fail to allege an "enterprise" under RICO. An enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *See United States v. Turkette*, 452 U.S. 576, 583 (1981). An enterprise may be an informal association with the common purpose of making money from the alleged schemes. *Id. See also United States v. Cagnina*, 697 F.2d 915, 920 (11th Cir. 1983) ("enterprise" includes an informal network engaged in racketeering activity). To plead the existence of an enterprise, it is sufficient simply to identify it. *San Jacinto Sav. Ass'n v. TDC Corp. of Florida*, 707 F.Supp. 1579, 1580 (M.D. Fla. 1989) (citing *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 790 (3rd Cir. 1984).

The plaintiffs allege in the amended complaint that the C4T MLL Enterprise "amounted to an 'association in fact' enterprise within the meaning of 18 U.S.C. § 1961(4)." Amended Complaint

8

at ¶ 50. Thus, to plead an association-in-fact enterprise, the plaintiffs must identify a group of persons who are associated together for a "common purpose of engaging in a course of conduct." *In re Managed Care Litigation*, 150 F.Supp.3d 1330, 1342 (S.D. Fla. 2001) (citing *Turkette*, 452 U.S. at 583). I find that the plaintiffs have sufficiently alleged an association-in-fact enterprise under RICO. For instance, the plaintiffs state that Mr. Gause and Mr. Homa were at the top of the C4T MLL Enterprise, and another individual, Joe Denson, dealt directly with Mr. Gause and Mr. Homa as well as directed the Bahamas side of the enterprise. Amended Complaint at ¶ 50. They also allege that the association-in-fact enterprise consisted of Leadenhall as well as Sunset Financial, C4T Management, T/P Funding, Cash 4 Titles, Bank of Bermuda and other known and unknown persons. *Id.* at ¶ 115. The plaintiffs further claim that Leadenhall "participated indirectly in the management and operation of the C4T MLL Enterprise and/or the direction of its affairs by assisting in the money laundering and misappropriation described further below." *Id.* at ¶ 51. Reading the complaint as a whole, the plaintiffs have sufficiently alleged that Leadenhall, along with other individuals and entities, belonged to a group of persons who were associated for the common purpose of misappropriating and diverting the class members' funds and concealing that unlawful conduct. *See In re Managed Care Litigation*, 150 F.Supp.3d at 1342 (finding plaintiffs sufficiently pled a RICO enterprise by alleging that all members of the enterprise served the purpose of providing health care services to enrollees in health plans).

### b. "PATTERN OF RACKETEERING"

Leadenhall next argues that the plaintiffs fail to allege a "pattern of racketeering" under RICO.[4] Specifically, Leadenhall contends that the plaintiffs failed to plead the basic elements of the alleged predicate acts of mail fraud, wire fraud, and money laundering, and also failed to plead those predicate acts with the requisite particularity under Rule 9(b).

---

[4] The "pattern of racketeering activity" element requires that a civil RICO plaintiff establish "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" includes acts that are indictable under designated criminal offenses, including federal statutes prohibiting mail and wire fraud, or any of the criminal statues listed in 18 U.S.C. § 1961(1). To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *See* 18 U.S.C. § 1961(5); *Jackson*, 372 F.3d at 1264 (citations omitted).

9

### (i) MAIL OR WIRE FRAUD

A violation of the mail or wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, requires proof that a person (1) intentionally participated in a scheme to defraud another of money or property, and (2) used (or caused the use of) the mails or wires in furtherance of that scheme. *See Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359-60 (11th Cir. 2002) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991)).[5] A "scheme to defraud" entails the making of misrepresentations intended and reasonably calculated to deceive persons of ordinary prudence and comprehension. *Pelletier*, 921 F.2d at 1498-99. While a showing of fraudulent intent is necessary to establish mail or wire fraud, a RICO plaintiff "need not produce direct proof evidence of scienter." *Florida Software Systems, Inc.*, 46 F.Supp.2d at 1282 (citing *United States v. Suba*, 132 F.3d 662, 673 (11th Cir. 1998)); *Pelletier*, 921 F.2d at 1499 (inferring fraudulent intent from the alleged fact of the defendants' shell corporations and that the defendants entered into contracts without having the relevant experiences or resources to fulfill those contracts).

The Eleventh Circuit has held that a RICO plaintiff must satisfy the specifity requirement of Rule 9(b) in pleading mail and wire fraud claims. *See Durham*, 847 F.2d at 1511. Under Rule 9(b), the plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 166 F.3d 1364, 1380-81 (11th Cir. 1997) (citation omitted). The application of Rule 9, however, "must not abrogate the concept of notice pleading." *Durham*, 847 F.2d at 1511. Thus, "allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Id.* at 1512 (emphasis in original).

I find that the plaintiffs sufficiently allege mail and wire fraud under Rule 9(b). First, the plaintiffs state that Leadenhall "intentionally conspired and agreed to directly and indirectly conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity." Amended Complaint at ¶ 119. Furthermore, in reading the amended complaint as a whole

---

[5] The substantive elements of mail fraud and wire fraud are identical, with the exception of the use of the mails versus the use of the wires. *Id.* at 1360 n.25 (citation omitted).

10

and in the light most favorable to the plaintiffs, they have sufficiently alleged that Leadenhall was aware of the misappropriation and diversion of class members' funds, and participated in such transfers to create an appearance of legitimacy and to profit from such transactions. *See* Amended Complaint ¶¶ 72-75.

Furthermore, the plaintiffs have described how the scheme allegedly used the mails and wires. Namely, Leadenhall used the mails and wires "when sending documents relating to the loans and the repayment of such loans," or to transfer purported interest and/or principal payments from the Cash 4 Titles loan business, but which were actually funds from other class members. *Id.* at ¶ 86. The amended complaint also states the general time frame for the alleged fraudulent scheme (beginning in the mid-1990s through October of 1999), *id.* at ¶ 81, as well as the dates of specific transactions occurring over the mails and wires. For example, plaintiff Grey Wolf Holdings received monthly payments from the C4T enterprise between January of 1999 through August of 1999, which caused its continued involvement with the Cash 4 Titles business, although Grey Wolf's funds have not been repaid. *Id.* at ¶¶ 91-93. Plaintiff Robert Wolff also allegedly received a telephone call on or about October 14, 1999, in which "an authorized agent of the C4T MLL Enterprise was caused to state to Wolff that he would receive his first interest payment in November 1999." *Id.* at ¶ 97.

In sum, the plaintiffs allege that the representations made by Leadenhall deliberately misled the plaintiffs into believing that their monies in the Cash 4 Titles continued to generate interest and/or principal payments, and that it concealed the misappropriation and diversion of those funds. Accordingly, I conclude that the plaintiffs have pled mail and wire fraud with sufficient particularity. *See Colonial Penn Ins. Co.*, 814 F.Supp. at 1094 (applying the Eleventh Circuit standard in finding that plaintiff satisfied Rule 9(b) using "alternative means," even if it did not allege specific times, dates or places for all of the alleged predicate acts).

### (ii) MONEY LAUNDERING

Leadenhall also contends that the plaintiffs fail to allege any facts with particularity in support of the money laundering claim.[6] Although Leadenhall maintains that a claim of money

---

[6] The plaintiffs state in the amended complaint that Leadenhall and its co-conspirators "committed acts of money laundering, namely financial transactions, to promote their unlawful misappropriation or embezzlement of C4T MLL Enterprise funds in violation of 18 U.S.C. §

11

laundering under RICO must meet the heightened pleading requirements of Rule 9(b), I disagree and find that the plaintiffs are only required to satisfy Rule 8 in pleading the predicate act of money laundering. The Eleventh Circuit has not clearly set forth what standard should be applied when determining the sufficiency of a complaint alleging a non-fraud claim under RICO. *See Gen. Cigar Co., Inc. v. CR Carriers, Inc.*, 948 F.Supp. 1030, 1038 (M.D. Ala. 1996). Moreover, other federal courts disagree as to whether a plaintiff must satisfy a heightened pleading standard when alleging money laundering for purposes of a RICO claim. *Compare Madanes v. Madanes*, 981 F.Supp. 241, 253 (S.D.N.Y. 1997) (holding that predicate acts of mail and wire fraud must be plead according to Rule 9(b), which applies to claims sounding in fraud or mistake, but predicate of money laundering must only meet the notice pleading standard of Rule 8), *with Spitzer v. Abdelhak*, No. CIV. A. 98-6475, 1999 WL 1204352, at *4 (E.D. Pa. Dec. 15, 1999) (holding that Rule 9(b) applied to the alleged predicate act of money laundering because all the predicate acts contain an element of fraud).[7] Money laundering, although an illegal activity, does not contain an element fraud. Therefore, I hold that the plaintiffs' allegations must only satisfy the notice pleading requirement of Rule 8.

A claim for money laundering under RICO requires allegations that a person conducted a financial transaction with money he knew to be the proceeds of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, knowing that the transaction is designed to conceal or disguise the source or nature of the activity. *See* 18 U.S.C. § 1956(a)(1). *See also Gen. Cigar Co., Inc. v. CR Carriers, Inc.*, 948 F.Supp. 1030, 1038 (M.D. Ala. 1996) (citing *United States v. Flynt*, 15 F.3d 1002 (11th Cir. 1994)). The plaintiffs have sufficiently alleged that Leadenhall used the proceeds from the C4T enterprise's mail and wire frauds to make "purported interest and/or principal payments to Lenders in order to conceal [its] theft from the C4T MLL Enterprise."

---

1956(a)(1)(A), and to conceal their unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)." Amended Complaint at ¶ 82.

[7] *Ageloff v. Kiley*, 318 F.Supp.2d 1157, 1159 (S.D. Fla. 2004), also held that each alleged predicate act in a civil RICO complaint, including money laundering, must be plead with the particularity required under Rule 9(b). *Ageloff*, however, based this holding on *Republic of Panama*, 119 F.3d at 950, in which only the predicate acts of mail and wire fraud were alleged.

Amended Complaint at ¶ 81. Thus, because plaintiffs claim that Leadenhall used funds from the enterprise to create an "aura of legitimacy," they have alleged Leadenhall's intent to promote the unlawful scheme. *See United States v. Savage*, 67 F.3d 1435, 1440 (11th Cir. 1995) (citing *United States v. Johnson*, 971 F.2d 562, 566 (10th Cir. 1992) (circumstantial evidence of intent to promote a fraudulent scheme exists if the transfer lends an "aura of legitimacy" to the scheme)).

The plaintiffs have also sufficiently alleged that Leadenhall conducted the unlawful transactions for the purpose of concealing or disguising the nature of the unlawful activity. Namely, the plaintiffs allege that the unlawful transfers were made from bank accounts at Leadenhall to individuals and banks in the United States to assist in concealing the misappropriation and to create the appearance that money was flowing into and out of the Cash 4 Titles business. *See* Amended Complaint at ¶¶ 73, 76. Such claims are adequate to plead that Leadenhall conducted the unlawful misappropriation of funds to conceal the origins of the proceeds. *See United States v. Majors*, 196 F.3d 1206, 1213 (11th Cir. 1999) (finding that defendants' moving of ill-gotten funds in and out of various corporate bank accounts designed to make the funds appear legitimate was sufficient to satisfy the concealment prong under § 1956(a)(1)(B)).

Accordingly, I find that the plaintiffs have sufficiently alleged the predicate act of money laundering. Because I conclude that the plaintiffs have sufficiently alleged the predicate acts of mail and wire fraud under Rule 9(b) and money laundering under Rule 8, they have pleaded a "pattern of racketeering" under RICO to support their RICO conspiracy claim in Count I.

### B. CIVIL CONSPIRACY TO CONVERT UNDER COUNT II

Leadenhall next contends that the plaintiffs fail to state a cause of action for civil conspiracy to convert the class members' property under Count II. I disagree, but dismiss Count II for other reasons.

The elements for a claim of civil conspiracy are: (1) a conspiracy between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damages to the plaintiff as a result of the acts done under the conspiracy. *Florida Fern Growers Assoc., Inc. v. Concerned Citizens of Putnam County*, 616 So.2d 562, 565 (Fla. Dist. Ct. App. 1993) (citation omitted). A cause of action for civil conspiracy exists only "if the basis for the conspiracy is an independent wrong or tort which would constitute

a cause of action if the wrong were done by one person." *Blatt v. Green, Rose, Kahn & Poitrkowski*, 456 So.2d 949, 951 (Fla. Dist. Ct. App. 1984) (citation omitted).

Leadenhall contends that the plaintiffs fail to indicate with any specificity how or if Leadenhall had specific knowledge of the alleged diversion or of any common unlawful purpose. The plaintiffs have incorporated all of the previous paragraphs prior to Count II, including those that constitute Count I – and that is improper. *See, e.g., Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 & n.9 (11th Cir. 2002); *Moore v. Am. Fed'n of Television and Radio Artists*, 216 F.3d 1236, 1240-41 (11th Cir. 2000). Accordingly, Count II is dismissed without prejudice.

Because this pleading error can easily be fixed, and because Count II may be amended, I address the merits of Leadenhall's argument. I conclude that the plaintiffs have sufficiently alleged Leadenhall's specific knowledge of the common unlawful purpose, for largely the same reasons discussed above regarding the RICO conspiracy count. For example, the plaintiffs allege that Leadenhall conspired to misappropriate and divert funds that class members had loaned for the Cash 4 Titles' business. Amended Complaint at ¶¶ 41, 78, 81. They also claim that Leadenhall had knowledge of the overall objective of the conspiracy, which was allegedly to misappropriate and divert funds from money provided by class members to the Cash 4 Titles' car loan business. *See* Amended Complaint at ¶¶ 58, 69, 83. Leadenhall, according to the plaintiffs, knew that the source or beneficiary of the funds they misappropriated originated from the money provided by the class members.

Leadenhall further contends that the plaintiffs fail to state a cause of civil conspiracy because they fail to assert the underlying claim of conversion. Under Florida law, conversion is " 'an act of dominion wrongfully asserted over another's property inconsistent with his ownership of it.' " *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (citations omitted); *Belford Trucking Co., Inc. v. Zagar*, 243 So.2d 646, 648 (Fla. Dist. Ct. App. 1971). Neither an obligation to pay money nor a breach of contract generally gives rise to a claim of conversion in tort. *Kee*, 918 F.2d at 1541. Florida courts have held, however, that money may be the subject of conversion "so long as it consists of specific money capable of identification." *See, e.g., Belford*, 243 So.2d at 648. Money is capable of identification where it is delivered at one time, by one act and in one mass, or

14

where the deposit is special and the identical money is to be kept for the party making the deposit, or *where wrongful possession of such property is obtained. Id.* (emphasis added).

I find that the plaintiffs have sufficiently pled the underlying claim for conversion because they allege that Leadenhall, by unlawful misappropriation and diversion, took wrongful possession of the class members' money intended for the legitimate Cash 4 Titles business. *See* Amended Complaint at ¶ 123. *See also Goodwin v. Alexatos*, 584 So.2d 1007, 1011 (Fla. Dist. Ct. App. 1991) (citing *Allen v. Gordon*, 429 So. 2d 369 (Fla. Dist. Ct. App. 1983) ("A conversion action is available as a remedy where money is wrongfully withdrawn from a bank account.")). Furthermore, "[w]here a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred." *Senfeld v. The Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So.2d 1157, 1161 (Fla. Dist. Ct App. 1984).[8] Likewise, the plaintiffs have also alleged that they "have demanded return of their property, but it has not been returned."

In sum, if not for the improper incorporation of the allegations in Count I, I conclude that the plaintiffs have sufficiently stated a claim for civil conspiracy to convert in Count II.

### C. FDUTPA CLAIM UNDER COUNT III

Finally, Leadenhall contends that the plaintiffs fail to state a cause of action under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*.

First, Leadenhall argues that the plaintiffs do not satisfy the requisite heightened pleading standard by failing to identify any false statement or deceptive fact made by Leadenhall in connection with the services it provided to consumers. Under FDUTPA, the plaintiffs must plead that the conduct complained of was unfair and deceptive, and that they were aggrieved by the unfair and deceptive act. *See Macia v. HBC of Florida, Inc.*, 694 So.2d 88, 90 (Fla. Dist. Ct. App. 1997). In cases where plaintiffs specifically plead fraudulent conduct under FDUTPA, courts have required pleading under the heightened standard of Rule 9(b). *See, e.g., Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1322 (M.D. Fla. 2002) (holding that plaintiff's FDUTPA claim alleges fraud, and thus should be plead with particularity). Courts have also held, however, that under FDUTPA, "a deceptive practice is one that is 'likely to mislead' consumers," to which the objective test adopted

---

[8] A conversion may occur, however, regardless of whether demand is made. *See id.*

by the Federal Trade Commission applies, and therefore does not require the elements of fraud to state a claim under the statute. *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2001). Because the plaintiffs do not specifically allege fraud under FDUTPA in Count III, they are only required to meet the pleading requirement under Rule 8 – and not Rule 9(b) – for purposes of this motion to dismiss.

Furthermore, contrary to Leadenhall's contention, FDUTPA is not limited as a remedy only for Florida citizens or residents. Rather, some Florida courts have held that FDUTPA reaches beyond Florida residents, and thus prohibits unfair, deceptive, and/or unconscionable practices which occurred within the boundaries of Florida without limitation. *See Millennium Communications & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So.2d 1256, 1261-62 (Fla. Dist. Ct. App. 2000) (disagreeing with *Coastal Physician Servs. of Broward County, Inc. v. Ortiz*, 764 So.2d 7 (Fla. Dist. Ct. App. 1999)).

Second, Leadenhall argues that the plaintiffs are not considered "purchasers" or "consumers" under the FDUTPA because they claim to be "lenders" in the transactions at issue in this case. I disagree. The Fourth District recently held that "the 1993 amendments to the FDUTPA made clear that the statute is not limited to purely *consumer transactions*. It is now intended by its plain text to apply to any act or practice occurring 'in the conduct of *any trade or commerce*' even as between purely commercial interests." *Beacon Property Mgmt, Inc. v. PNR, Inc.*, 890 So.2d 274, 278 (Fla. Dist. Ct. App. 2004) (citing Fla. Stat. § 501.204) (emphasis in original) (finding that a tenant's claim against a landlord for failure to maintain the premises sufficiently stated a cause of action under FDUTPA).[9] Under this broad interpretation of FDUTPA, I find, for the purposes of Rule 12(b)(6), that the plaintiffs are "consumers" under FDUTPA.

---

[9] "Trade or commerce" means the advertising soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity. Fla. Stat. § 501.203(8) (2004).

In Count III, the plaintiffs claim that the C4T enterprise constituted conduct of trade or commerce under § 501.204 and allegedly committed "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce." Amended Complaint at ¶¶ 128-29. The plaintiffs further allege that they have suffered damages as a result of Leadenhall's violations of the FDUTPA. Under the liberal standard of Rule 12(b)(6), I therefore conclude that the plaintiffs' have sufficiently stated a cause of action against Leadenhall under the FDUTPA.

## VI. CONCLUSION

In sum, Leadenhall's motion to dismiss the amended complaint [D.E. 29] is DENIED as to Counts I and II, and GRANTED as to Count II, which is dismissed without prejudice. If Leadenhall wishes to amend Count II, it has until April 15, 2005, to do so. Leadenhall's answer is due by April 29, 2005.

DONE and ORDERED in chambers in Miami, Florida, this 30th day of March, 2005.

*[signature]*
Adalberto Jordan
United States District Judge

Copy to:   Magistrate Judge Brown
           All counsel of record