# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 03-22778-CIV-COHN/TORRES

ROBERT S. WOLFF, *et. al.*,

        Plaintiffs,

v.

CASH 4 TITLES (d/b/a), CHARLES
RICHARD HOMA, MICHAEL GAUSE,
SUNSET FINANCIAL SERVICES,
LLC, C4T MANAGEMENT, INC., C4T
FUNDING, INC., T/P FUNDING
SERVICES, INC., LEADENHALL
BANK & TRUST, AXXESS
INTERNATIONAL LIMITED, JANE
AND JOHN DOES, NUMBERS 1-25,
and MOE and JOE ENTITIES,
NUMBERS ENTITIES, NUMBERS 1-
23,

        Defendants.

_____ /

## REPORT AND RECOMMENDATION ON PETITION FOR AN
## AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

This matter came before the Court on August 13, 2012, on Class Plaintiffs'
Petition for an Award of Attorneys' Fees and Expenses. [D.E. 175].  No objection or
response was filed to the Petition despite notice to the class and the passage of time.
The Court set a hearing on the Petition, with notice to the class, which was
scheduled for August 13, 2012.  During that hearing, Class Counsel presented
arguments supporting the Petition.  No other person or entity appeared at the
hearing to oppose the Petition.

The Court has considered the Petition and Supporting Affidavit of W. Gordon Dobie, the argument of counsel at the August 13th hearing, and the entire record in this protracted litigation.  The Court recommends that the Petition be Granted based on the findings set forth herein.

The fundamental issue presented in the Petition is whether Class Counsel should be awarded, at this stage of the litigation, a reasonable fee under the factors set forth in *Camden I Condo Association v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).  Those factors include (1) the size of the fund or the amount of benefit produced for the Class, (2) the risk associated with undertaking the litigation, (3) the prevailing market rate for the attorneys' services, (4) the quality of counsel, (5) awards in comparable cases, (6) the time and labor required, (7) the preclusion of other employment and (8) the undesirability of the cases.  *Id.* at 772.

The Court finds that under the circumstances of this case – the lengthy pursuit of a RICO judgment in foreign liquidation proceedings – Class Counsel's Petition is warranted.  The litigation and recovery required high-risk, international proceedings, and has resulted in a recovery for the Class of more than 65% of their losses.

### A.

The Court finds that the risk nature of this litigation supports a percentage fee to be awarded from the common class fund generated through the work of Class Counsel in the action. That risk is the most important factor in determining the appropriate percentage fee to be awarded under *Camden I*.  *See Ressler v. Jacobson*,

149 F.R.D. 651, 654-56 (M.D. Fla. 1992); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *aff'd in part and rev'd in part*, 803 F.2d 1135, 1151-53 (11th Cir. 1986); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 889 F.2d 21 (11th Cir. 1990).  The Court should consider the risk at the time of filing suit.  *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (citing *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 700 (M.D. Ala. 1988)); *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985) ("whether the chance of a substantial judgment was sufficiently great when the case was brought").

The inherent risks involved in filing and prosecuting this class action weigh strongly in favor of the requested fee.  *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting that "there are inherent, substantial risks entailed in undertaking *any* contingency fee action") (emphasis added).  Class Counsel litigated this case on an "at risk" contingent fee basis.  Thus, unless Class Counsel were ultimately successful in (1) demonstrating that Leadenhall was a culpable member of the Cash 4 Titles conspiracy *and* (2) enforcing a judgment against this offshore financial institution, Class Counsel would not have received any compensation for the extensive time, energy, and expense of litigating this case.  It was Class Counsel alone that bore the entire risk of this representation – a significant finding in support of the requested fee.  *See, e.g., Gutter v. E. I. DuPont De Nemours & Co.*, No. 1:95-cv-02152-ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees

($1,201,728.42) because they expended significant time and resources over seven-year period on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99-md-01317-PAS, Doc. No. 1557 at 8-10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).  In contrast, the Class itself bore no economic risk in litigating this case; nor did the Leadenhall Liquidator or its Estate, which was able to apply the full resources of the estate to opposing the judgment—and depleting the pool from which Plaintiffs and Counsel would ultimately recover with every step.  With access to such resources and every incentive to exhaust them, the Leadenhall Liquidator was able to battle Class Counsel for over eight years.  Throughout this period, only Class Counsel faced the real risk that, if unable to make a recovery, they would have to bear the entire cost of the litigation, including substantial out-of-pocket expenses.

This risk was magnified by the fact that, unlike some class actions, this case was a full, not partial, contingency fee case.  Class Counsel was not guaranteed their hourly rates or reduced hourly rates for their efforts in this litigation, nor was any hybrid contingent fee negotiated guaranteeing Counsel at least some minimum amount for fees and costs.  *See Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (noting that "the presence of a consistently paying client for four years, even at a reduced hourly rate, would warm the heart, let alone the pocketbook, of even the most successful securities litigator").

-4-

It is also unique and significant that Class Counsel was forced to initiate substantial foreign proceedings to secure and enforce this Court's RICO judgment. The existence of an offshore defendant based in the Bahamas meant that enforcement of the judgment against that defendant was going to be time-consuming and difficult. This is because of the existence of a rule of English public policy against the enforcement of foreign revenue or penal laws. Many commentators have suggested that a civil RICO award from the United States violates the anti-foreign penal law enforcement principle in this old rule. *See* 56 Am. Jur. Trials 529, 568-70 (1995) (citing *Government of India v. Taylor* (1960) AC 491; *Huttington v. Attrill* (1893) AC 150; *Feyerick v. Hubbard* (1960) 71 L J K B p 509; Dicey and Morris, *The Conflict of Laws,* 428.9 (Stevens, 1993)).

In the *Lennox Lewis* case, for instance, the English Court of Appeal found that the enforceability of foreign awards involving an automatic "multiplier" for punitive damages (such as trebled damages under RICO) was an undecided question under the common law of England & Wales (which is frequently followed in the Bahamas). *Lewis v. Elides,* [2003] EWCA Civ 1758, [2004] 1 All ER 1196, [2004] 1 WLR 692.

However, in this case, offshore Class counsel found and utilized persuasive case law from the British Columbia Court of Appeal and the Supreme Court of Canada that held that judgments made by U.S. courts, which had been trebled or increased substantially for punitive damages, were not so repugnant or shocking as to violate fundamental Canadian public policy such that they were given comity and

enforced.  *See Beals v. Saldanha* [2003] 3 S.C.R.  The Supreme Court of the Bahamas accepted the rationale of these Canadian appellate decisions in refusing to allow the Liquidator to pursue yet another appellate adventure on this exotic point of cross-border judgment enforcement law to the Privy Council in London.

In addition, Class Counsel undertook considerable expense in prosecuting this case and collecting upon the judgment abroad.  Suing an offshore defendant obviously brings with it the added costs of international travel and hotel expenses, not to mention the need to hire counsel abroad.  *See, e.g., In re Terazosin*, 1:99-md-01317, D.E. 1557 at 8 (award of 33.3% was reasonable where attorneys incurred significant expense in prosecuting the matter).

Furthermore, once judgment was obtained, the risks increased when Leadenhall entered bankruptcy proceedings.  The Bank's Liquidator began utilizing the resources of the Estate to object to paying the judgment.  The Liquidator then fought Class Counsel at every juncture of the litigation.  The Liquidator essentially had limitless resources to fight the judgment, knowing that every dollar spent to avoid paying the Class was a dollar removed from the Estate that would ultimately be paid out to the Class.  Class Counsel then had to pursue the Liquidator aggressively enough to obtain recovery on the Class' judgment without emptying out the Estate's coffers to the detriment of the Class.  In doing so, Class Counsel hired and coordinated with local Bahamian counsel, incurring out-of-pocket the expense of doing so.  This extraordinary effort required in the case supports the Petition here.

As a result, Class Counsel should be materially rewarded for its willingness to assume these substantial risks.   Perhaps the best objective test of the risk inherent in this litigation is the absence of any other attorneys willing to represent the class on a contingent fee basis.  With thousands of defrauded investors not one other law firm was willing to step forward on a contingency fee basis and file suit against Leadenhall.  This is despite the well-publicized involvement in the Cash 4 Titles fraud of several prominent professional athletes, each of whom lost in excess of $1 million.  Despite the amount of money lost, the widespread publicity, and the existence of high-profile clients (who offer an attorney the prospect of additional future work), no other attorneys stepped up to represent the Class against the Bank.  *See Escamilla v. Asarco, Inc.*, Case No. 91 CV 5716 (D. Colo. Nov. 5, 1993) (25% of $22 million settlement reasonable where "class counsel faced the risk not only of being uncompensated for their work . . . but of being left with a substantial debt [of more than $264,000 for] unreimbursed cost advances").

Despite the risks facing Class Counsel, they nonetheless obtained a substantial, tangible, and real benefit for the Class.   Unlike cases in which attorneys for a class petitioned for a fee award after obtaining non-monetary relief for the class, such as in the form of "coupons," Class Counsel here created a wholly cash common fund.  *Compare Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1296 (11th Cir. 1999) ("[u]nlike many other class actions, the total fund of $40 million was not illusory or meaningless"), *with Dunk v. Ford Motor Co.*, 56 Cal. Rptr. 2d 483, 490 (Cal. Ct. App. 1996) ($400 coupon toward purchase of new car); *see*

*also In re Terazosin*, 1:99-md-01317 (33.3% award to class counsel appropriate where they obtained nearly $74 million in total recovery between two related litigations); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (lower court did not abuse its discretion when taking into consideration the amount of the recovery obtained for the class as a basis for upwardly adjusting attorneys' award to 33.3%).

Further, this litigation saved each member of the Class the burden and expense of prosecuting individual actions, which, in the aggregate, would have cost many times the fee award requested here.  Not only would the filing of thousands of individual complaints in courts across the country have been a tremendous burden on the judiciary system, but doing so also likely would not have provided Plaintiffs with the recovery gained here.  *See Seiffer v. Topsy's Int'l. Inc.*, 70 F.R.D. 622, 634 (D. Kan. 1976) (court awarded approximately 30% of fund as attorneys' fees, noting "[t]o conduct litigation of this magnitude and complexity undoubtedly would have been beyond the reach of many claimants had they attempted to proceed individually").  Plaintiffs individually would have found it extremely difficult to challenge the Leadenhall Liquidator in Bahamian Court, given the cost of hiring Bahamian counsel and specialists in cross-border insolvency to coordinate this international, years-long effort.

## B.

Having found that Class Counsel is entitled on this record to a material fee for its work in the case, we turn to the question of the amount of that fee.  The

"object in awarding a reasonable attorney's fee . . . is to simulate the market . . . ." *In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992); *see also In re RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 96,984, 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("What should govern [fee] awards is . . . what the market pays in similar cases.").  A "court must set a fee by approximating the terms that would have been agreed to *ex ante*, had negotiations occurred."  *In the Matter of Synthroid Mktg. Litig.*, Nos. 00-3164, 2001 WL 1000713, at *5 (7th Cir. Aug. 31, 2001); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572 ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."); *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 322 (D.N.J. 1998) (considering "what percentage the litigants might have negotiated as part of private contingent fee arrangement"); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 385 (E.D. Pa. 2000) (quoting *In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 193); *Goldberger v. Integrated Resources. Inc.*, 209 F.3d 43, 52 (2d Cir. 2000) ("market rates, where available, are the ideal proxy for [class counsel's] compensation").

"[A]n award of attorneys' fees at the market rate is necessary to provide attorneys the incentive to take . . . class actions, and without such an incentive, employees would be faced with substantial difficulties finding counsel willing to undertake meritorious, but high-risk, litigation." *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D. Wa.. 2001).  The requested fee of 33% is at the market rate which the Class could have negotiated at the beginning of this matter.  One-

third of the recovery is considered standard in a contingency fee agreement.  *See* Alba Conte, *Attorneys Fee Awards* § 2.07 at 48 (2d ed. 1995).

An additional factor to consider in evaluating attorneys' fees is the "experience, reputation, and ability of the attorneys."  *Camden I*, 946 F.2d at 772 n.3 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  Here, the requested fee is reasonable in light of the quality of counsel involved.  Class Counsel is made up of attorneys experienced in the areas of RICO, Ponzi, and class action.  The experience and quality of counsel afforded by Class Counsel is shown by the exceptional recovery obtained here.

Mindful of the need to attract counsel of this high caliber, courts have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively.  *See Elkins v. Equitable Life Ins. Co.*, No. Civ. A 96-296, 1998 WL 133741, at *35 (M.D. Fla. Jan. 27, 1998) ("Courts have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted effectively."); *Behrens*, 118 F.R.D. at 548 ("If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."); *Ressler*, 149 F.R.D. at 657 ("Attorneys who bring class actions are acting as 'private attorneys general' and are vital to the enforcement of the securities laws.  Accordingly, public policy favors the granting of

-10-

counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions."). Class Counsel should thus be compensated in a manner that will encourage other competent attorneys to undertake complex fraud actions and vigilantly enforce the RICO laws.

Under *Camden I*, this Court should also look at awards in comparable cases in determining the appropriate percentage fee award. *Camden I*, 946 F. 2d at 772. The requested fee is entirely consistent with fee awards in comparable cases nationwide, within the Eleventh Circuit, and within the Southern and Middle Districts of Florida. An analysis has shown that "based on the opinions of other courts and the available studies of class action attorneys' fee awards (such as the NERA study), this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to one-third (33.34%) have been routinely awarded in class actions." *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000). *Shaw* further observed that "[e]mpirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Id.* The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third. *See generally Waters v. Int'l Precious Metals Corp., et al.*, 190 F.3d 1291, 1291 (11th Cir. 1999) (awarding one-third on a $40 million recovery).

In fact, the requested fee is entirely consistent with the percentage awarded in class actions in the Southern and Middle Districts of Florida since the percentage-of-fund approach was adopted by the Eleventh Circuit in *Camden I. Id.*

at 1300 (33% award is not an abuse of discretion); *Gutter,* No. 95-2152-Civ-ASG, D.E. 626 (S.D. Fla. May 30, 2003) (awarding 33 ⅓ %); *In re Terazosin,* No. 99-MDL-1317-PAS, D.E. 1557 (awarding 33 ⅓ %).; *Bakalor v. Integrated Comm'n Network, Inc.,* No. 96-2021-Civ-JLK, D.E. 108, (S.D. Fla. 1997) (awarding 33.3%); *Silver v. Sensormatic,* No. 93-8619-Civ-SM, D.E. 113 (S.D. Fla. 1996) (awarding 33.3%); *Tapken v. Brown,* No. 90-0691-Civ-SM, D.E. 362 (S.D. Fla. 1995) (awarding 33%); *Wegweiser v. Great Western,* No. 95-8543-Civ-DLK, D.E. 194 (S.D. Fla. 1997) (awarding 33.3%); *In re Home Shopping Network Sec. Litig.,* No. 87-428-Civ-T-13(A) (M.D. Fla. Oct. 15, 1991) (awarding 33%); *In re Belmac Corp. Sec. Litig.,* No. 92-1814-Civ-T-23-(C) (M.D. Fla. 1994) (awarding 31%); *Golden v. U.S. Diagnostics, Inc.,* No. 97-8010-Civ-ASG, D.E. 107 (S.D. Fla. 1998) (awarding 30%); *Ehrenreich v. Sensormatic Elec. Corp.,* No. 95-6637-Civ-WJZ, D.E. 192 (S.D. Fla. 1998) (awarding 30%); *Lopez v. Checkers Drive-In Rests., Inc.,* No. 94-282-Civ-T-17C (M.D. Fla. 1996) (awarding 30%); *Minnick v. Pages, Inc.,* No. 95-277-Civ-T-21C (M.D. Fla. 1996) (awarding 30%); *Ressler,* 149 F.R.D. at 653 (awarding 30%); *Holloway v. Chapnick,* No. 89-6572-Civ-JCP, D.E. 441 (S.D. Fla. 1994) (awarding 30%); *In re Royce Lab., Inc. Sec. Litig.,* No. 92-0923-Civ-KMM, D.E. 107 (S.D. Fla. 1993) (awarding 30%); *In re Perfumania, Inc. Sec. Litig.,* No. 92-1490-Civ-SM, D.E. 74 (S.D. Fla. 1993) (awarding 30%); *In re Int'l Recovery Corp. Sec. Litig.,* No. 92-1474-Civ-CCA, D.E. 63 (S.D. Fla. 1994) (awarding 30%); *In re Sound Advice, Inc. Sec. Litig.,* No. 92-6457-Civ-UUB, D.E. 110 (S.D. Fla. 1994) (awarding 30%); *Kaser v. Swann,* No. 90-607-

Civ-Orl-3A18 (M.D. Fla. 1993) (awarding 30%); *In re FPL Group Consol. Litig.*, No. 90-8461-Civ-LCN, D.E. 75 (S.D. Fla. 1992) (awarding 30%).

By every relevant benchmark, the requested award is consistent with awards in comparable cases in this Court and in the Eleventh Circuit. That is particularly true given the time and labor that was required. *See Camden I*, 946 F.2d at 772 (quoting *Johnson,* 488 F.2d at 717-19). Class counsel expended more than 7,753 otherwise billable hours to this case over eight years, worth $3,446,600 at their ordinary hourly rates, and $140,935.36 in out-of-pocket expenses to pursue recovery abroad. The Court also finds the out-of-pocket expenses to have been reasonably incurred by Class Counsel.

Courts awarding percentage fees in common fund cases have warned against "focus[ing] too narrowly on the number of hours billed or the hourly rate in contingency fee cases" because, as one court recognized:

> Where success is a condition precedent to compensation, "hours of time expended" is a nebulous, highly variable standard, of limited significance. One thousand plodding hours may be far less productive than one imaginative, brilliant hour. A surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more.

*In re King Resources Sec. Litig.*, 420 F. Supp. 610, 631 (D. Colo. 1976) (quoting George D. Hornstein, Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards, 69 Harv. L. Rev. 658, 660 (1956)); *see also Shaw*, 91 F. Supp. 2d at 964 ("Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one sixth of that performed by his

marginal colleagues who require an hour and a half for the same operation."). Yet this particular case is one where *both* the hours spent *and* the recovery obtained justify the fee requested.

The fee requested, $4,781,794.70, represents a 1.4 percent multiplier over the usual and ordinary time value of the hours expended by Class Counsel. Such lodestar is well below those adopted by other Courts as appropriate in awarding Class Counsel fees. *See*, *e.g.*, *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343-44 (S.D. Fla. 2007) (a lodestar of three appears to be the average; in many cases, multiples much higher than three have been approved).

**C.**

For the foregoing reasons, it is hereby **RECOMMENDED** that:

1. Class Counsel's Petition for Award of Attorneys' Fees and Expenses [D.E. 175] be **GRANTED**.

2. An Order should be entered awarding Class Counsel from the common fund an additional sum of $3,893,952.42. This amount represents a total fee award of $4,781,794.89 plus a cost award of $112,157.53, less the $1,000,000 interim fee and cost award previously entered.

3. A separate Report and Recommendation shall be entered on the proposed distribution of the common fund.

4. Pursuant to Local Magistrate Rule 4(b), all interested parties have fourteen days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable James I. Cohn, United States District

Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED i**n Chambers at Miami, Florida this 26th day of September, 2012.

*/s/ Edwin G. Torres*
**EDWIN G. TORRES**
United States Magistrate Judge